# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

JAMES TERRY MOON, JR.,

    Plaintiff,

v.

MR. HARRIS; MR. DOMINI; MS. JONES; MR. COX; MR. KILPATRICK; and MS. JOHNSON,

    Defendants.

CIVIL ACTION NO.: 5:17-cv-122

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Smith State Prison in Glennville, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement. (Docs. 1, 5, 8.) For the reasons that follow, the Court **DENIES** Plaintiff's Motions for Leave to Proceed *in Forma Pauperis*. (Docs. 2, 6, 10.) Furthermore, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff leave to appeal *in forma pauperis*.[1]

---

[1] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A Magistrate Judge's Report and Recommendation ("R&R") provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that an R&R served as notice that claims would be *sua sponte* dismissed). This R&R constitutes fair notice to Plaintiff that his suit is barred and due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the District Court will review *de novo* properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562-TWT-JFK, 2012 WL

## PLAINTIFF'S ALLEGATIONS

Plaintiff filed this cause of action on September 15, 2017, along with a Motion for Leave to Proceed *in Forma Pauperis*. (Docs. 1, 2.) The Court then issued an Order consolidating another of Plaintiff's cases with this one because each cause of action alleged the same facts and requested essentially the same relief. (Doc. 4.) In each of his Complaints, Plaintiff asserts that he was robbed at Ware State Prison by ten fellow inmates who are members of a gang.[2] (Doc. 1, p. 4; Doc. 5, p. 4; Doc. 8, p. 6.) Plaintiff contends these inmates stole contraband from him, including a cell phone, and threatened him with future harm. (Doc. 5, p. 4; Doc. 8, p. 6.) Plaintiff notified Sergeant Harris of the robbery and threats, who then notified Lieutenant Domini of the incident. (Doc. 1-1, p. 4; Doc. 5, pp. 5–6; Doc. 8, p. 6.) Plaintiff alleges Defendant Domini placed him in isolation without due process and refused his request for protective custody. (Id.) Plaintiff maintains that after this incident, other officers and prison administrators denied his requests to be placed in protective custody and have refused to write an incident report on the robbery, and that he has remained in disciplinary segregation without a hearing. (Doc. 1-1, p. 4; Doc. 5, pp. 6–8.) Furthermore, Plaintiff alleges that officers have begun writing disciplinary reports against him because of his refusal to come out of disciplinary segregation. (Doc. 5, p. 8; Doc. 8, p. 6.) As relief, Plaintiff requests nominal, compensatory, and punitive damages, as well as a declaration that his rights were violated and injunctions for protective custody and investigation of his grievance. (Doc. 1, pp. 5, 8; Doc. 5, p. 12; Doc. 8, p. 6.)

---

5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that a magistrate judge's R&R constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

[2] In line with its obligation to construe *pro se* pleadings liberally, the Court gleans and accepts as true the following facts from all three of Plaintiff's Complaints, interpreting both his second and third Complaint filings as supplements to his original Complaint.

On October 20, 2017, Plaintiff notified the Court of his transfer to Smith State Prison from Ware State Prison on September 21, 2017. (Doc. 3.) As to the claims in his Complaint, Plaintiff states that he filed grievances at Ware State Prison regarding these claims but has not gotten a response or result. (Doc. 1, p. 7; Doc. 5, p. 9; Doc. 8, p. 8.) Specifically, Plaintiff states his first grievance was lost or thrown away and that he has yet to receive a response to the second grievance he filed when the first one garnered no response.[3] (Doc. 1, p. 7; Doc. 8, p. 8.) Plaintiff maintains prison officials missed their deadline in which to respond to his first grievance and that his second grievance has been in process for over two months. (Doc. 1, p. 7.) Finally, Plaintiff states that he did not appeal his second grievance because he was transferred before he could do so and was placed in segregation upon transfer. (Doc. 8, p. 8.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

---

[3] Plaintiff filed his second grievance on August 14, 2017. (Doc. 1-1, p. 5.)

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v.

Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . .") (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

**I. Dismissal for Plaintiff's Failure to Exhaust Available Administrative Remedies Before Filing Suit**

**A. Exhaustion at Frivolity Review Stage**

Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). However, the normal pleading rules still apply, and when an affirmative defense appears on the face of a complaint making it clear that a prisoner cannot state a claim for relief, dismissal is warranted under the screening process set out in 28 U.S.C. § 1915A. Id. at 214–15. "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (internal punctuation and citation omitted). Thus, when a prisoner admits in his complaint that he has not exhausted the grievance process, the Court should dismiss the lawsuit during the frivolity screening. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to § 1997e(a) if it is clear from the face.")

5

### B. Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure

on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (citing Harris v. Garner, 216 F.3d 970, 981 (11th Cir. 2000)).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). The purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909,

at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

**C.     Georgia Department of Corrections' Grievance Process**

Within the Georgia Department of Corrections, the grievance procedure is a two-step process. See Shaw v. Toole, No. 6:14-cv-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015) (citing Georgia Department of Corrections' Standard Operating Procedure IIB05-0001 ("SOP IIB05-0001")), *report and recommendation adopted*, 2015 WL 5025478 (S.D. Ga. Aug. 24, 2015). The process commences with the filing of a grievance, which must be filed within ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance." Id. The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. Id. The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. Id. An inmate can file an appeal with the Commissioner's Central Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; *or when the time allowed for the warden's decision has expired.* Id. (emphasis added). The inmate has seven (7) calendar days in which to file this appeal, and the Commissioner has 100 calendar days after receipt to render a decision. These time limits may be waived for good cause. Id.

Notably, SOP IIB05-0001 applies to all inmates in Georgia Department of Corrections' facilities, which includes both Ware State Prison and Smith State Prison. Grievance forms must be available in the control rooms of all living units and must be provided to inmates upon request. Simpson v. Allen, No. 6:15-cv-118, 2016 WL 5024226, at *4 (S.D. Ga. Sept. 16, 2016) (citing SOP IIB05-0001), *report and recommendation adopted*, 2016 WL 6609195 (S.D. Ga. Nov. 7, 2016). Further, inmates are permitted to pursue grievances at their present facility of incarceration concerning events that occurred at a different facility. Johnson v. Holt, No. 5:14-CV-380 (MTT), 2015 WL 6453151, at *1 n.1 (M.D. Ga. Oct. 23, 2015).

### D. Plaintiff's Failure to Exhaust

It is apparent from the face of Plaintiff's Complaint that he did not exhaust his available administrative remedies prior to filing this lawsuit. Each of Plaintiff's three Complaint filings indicates that he neglected to file an appeal with the Commissioner's Central Office on his first grievance, (doc. 1, p. 7; doc. 5, p. 9; doc. 8, p. 8), and he explicitly states in his most recently-filed Supplemental Complaint that he was "transferred before [he] could appeal" his second grievance, (doc. 8, p. 8). Thus, Plaintiff plainly admits that he did not avail himself of each step of the grievance process before filing suit, as required by Section 1997e(a). Although Plaintiff argues his transfer to Smith State Prison precluded him from filing an appeal because he was placed in segregation upon arrival, his argument fails to account for his obligation to pursue an appeal of that grievance with the Commissioner's Office despite his placement in segregation. To the extent Plaintiff contends his placement in segregation at Smith State denied him the ability to appeal, his contention is belied by SOP IIB05-0001's requirement that forms be supplied upon request and his own pleadings that show he filed two grievances while in segregation at Ware State.

Moreover, Plaintiff filed this suit *prior* to his being transferred to Smith State Prison.[4] Therefore, the operative date for determining exhaustion, September 15, 2017, occurred before any issues with properly appealing his grievance due to transfer could have arisen, and Plaintiff's own statements show he did not exhaust by that date. In short, Plaintiff's transfer does not excuse his failure to exhaust before filing this lawsuit. See Bryant, 530 F.3d 1368, 1379 (11th Cir. 2008) (plaintiff failed to exhaust administrative remedies by failing to file grievance at new facility following transfer); Salas v. Tillman, 162 F. App'x 918, 920–21 (11th Cir. 2006) (prisoner plaintiff failed to exhaust, even though he argued defendants refused him grievance forms and claimed he did not know he could pursue grievances concerning events at a different facility, because he did not timely appeal); Prickett v. Lawson, No. 607CV041, 2008 WL 5046063, at *2–3 (S.D. Ga. Nov. 24, 2008) (discussing transfer's effect on the exhaustion requirement and finding that prisoner who filed case from different prison than where his claims arose was not excused from exhausting administrative remedies).

Putting Plaintiff's transfer to Smith State Prison aside, Plaintiff does not explain why he chose to file a second grievance after his first one was lost or thrown away rather than filing an appeal as mandated by SOP IIB05-0001. Taking his allegation that prison officials did not respond to his first grievance within the maximum allotted forty days as true, (doc. 1, p. 7), Plaintiff should have filed an appeal with the Commissioner's Office because the time allowed for the warden's decision had expired. Had Plaintiff done so, he would have been on the path toward proper exhaustion under the PLRA. Plaintiff's decision to eschew an appeal in favor of a second grievance dealt a fatal blow to his exhaustion efforts even before his transfer. See Hall v. Richardson, 144 F. App'x 835, 836 (11th Cir. 2005) ("[B]ecause [plaintiff] did not exhaust his

---

[4] As noted above, Plaintiff filed his lawsuit on September 15, 2017, and was transferred to Smith State Prison from Ware State Prison on September 21, 2017.

administrative remedies when he had the opportunity to do so before his transfer, the district court properly dismissed his complaint for failure to exhaust.").

Thus, it is clear from the face of his Complaint that Plaintiff failed to exhaust his administrative remedies as to either grievance before commencing this case. Accordingly, the Court should **DISMISS without prejudice** Plaintiff's Complaint for his failure to exhaust.

## II.  Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[5] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[5]  A certificate of appealability is not required in this Section 1983 action.

11

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motions for Leave to Proceed *in Forma Pauperis*. (Docs. 2, 6, 10.) Furthermore, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 19th day of January, 2018.

*/s/ R. Stan Baker*

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA